CASE NO. 22-4187(L), 22-4192

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

JOSE CRUZ COLON

*Defendant - Appellant,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT NEWPORT NEWS

**REPLY BRIEF OF APPELLANTS**

Sicilia C. Englert
LAW OFFICE OF
SICILIA C. ENGLERT, LLC
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
703-636-2261
sicilia.englert@englertlawoffice.com

*Counsel for Appellant
Jose Cruz Colon*

Fernando Groene
FERNANDO GROENE, PC
364 McLaws Circle, Suite 1A
Williamsburg, VA 23185
757-603-6173
fgroene@groenelaw.com

*Counsel for Appellant
Nastassja Lopez-Alvarado*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

ARGUMENT .............................................................................................................1

    I.     Striking all unvaccinated jurors violated the Appellants' Sixth Amendment right to a jury chosen from a fair-cross section of the community ......................................................................................................1

    II.    The factual statements advanced by the Government in its brief describing Appellant Lopez Alvarado's involvement in this drug conspiracy bear no resemblance to the facts and proof introduced at trial ................................................................................................................7

CONCLUSION .......................................................................................................11

## TABLE OF AUTHORITIES

### Cases

*Alleyne v. United States*,
  570 U.S. 99 (2013) ................................................................................... 7

*Berghuis v. Smith*,
  559 U.S. 314 (2010) ................................................................................. 2

*Duren v. Missouri*,
  439 U.S. 357 (1979) ................................................................................. 2

*Holland v. Illinois*,
  493 U.S. 474 (1990) ................................................................................. 6

*Joffe v. King & Spalding LLP*,
  575 F. Supp. 3d 427 (S.D.N.Y. 2021) ..................................................... 3

*Lockhart v. McCree*,
  476 U.S. 162 (1986) ............................................................................ 4, 5

*Taylor v. Louisiana*,
  419 U.S. 522 (1975) ......................................................................... 4, 5, 6

*United States v. Elder*,
  2022 WL 836923 (E.D.N.Y. Mar. 21, 2022) ......................................... 3

*United States v. Moses*,
  566 F. Supp. 3d 217 (W.D.N.Y. 2021) .......................................... 3, 6, 7

*United States v. Stewart*,
  256 F.3d 231 (4th Cir.), cert. denied, 534 U.S. 1049 (2001) ............... 8

### Constitutions and Statutes

U.S. Const. amend. VI ................................................................................ 2, 3
28 U.S.C. § 1861 ........................................................................................... 1

# ARGUMENT

I. **Striking all unvaccinated jurors violated the Appellants' Sixth Amendment right to a jury chosen from a fair-cross section of the community.[1]**

Two jurors were struck because of their vaccination status, not just one, as claimed by the Government. During a pretrial conference on September 15, 2021, six unvaccinated jurors were struck from the jury. Of those, five jurors (numbers 29, 55, 76, 82, and 110) were unvaccinated, but had alternate reasons for being struck. J.A. 86, 89-92. One juror (number 11) was struck solely because of vaccination status during the pretrial conference. J.A. 93.

During voir dire on September 20, 2021, the district court discovered another unvaccinated juror (number 6) who had slipped through the parties' notice during the pretrial conference. J.A. 200-201. The district court struck Juror 6 over defendants' objection to striking unvaccinated jurors. *Id.* Thus, the record shows that there were at least seven unvaccinated jurors in the *venire*, and all of them were struck by the district court. Two of the seven were struck solely because of vaccination status.

---

[1] The Government devoted a significant portion of its argument to setting forth the requirements of a claim under the Jury Service and Selection Act (JSSA), 28 U.S.C. §1861 *et. seq.*, and arguing that the Appellants failed to meet those requirements. Because the Appellants did not make a claim of error under the JSSA, this Reply Brief does not respond to that portion of the Government's argument.

1

The parties agree that the Sixth Amendment's "impartial jury" requirement includes the provision that the petit jury be drawn from a fair cross-section of the community. The parties agree that the Appellants have the burden to establish a prima facie violation of the fair-cross section requirement by showing that: (1) the group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this group in *venires* from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) the underrepresentation is due to systematic exclusion of the group in the jury selection process. Appellant's Opening Brief p. 18-19 (citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979)); Government's Response Brief p. 29 (quoting *Berghuis v. Smith*, 559 U.S. 314, 319 (2010), and *Duren*, 439 U.S. at 364)).

The Government argues, however, that the district court did not exclude a "distinctive group" in violation of the Sixth Amendment. Government's Response Brief, p. 30. But the Government sets up a false premise—that a distinctive group is defined by a unifying viewpoint—and then proceeds to argue that the Appellants failed to meet that standard.

The Government contends that the Appellants "failed completely to establish any such commonality in the views of unvaccinated prospective jurors—much less that those who were unvaccinated share the same reasons for not being vaccinated." Government's Response Brief, p. 30. For support, the Government relies on district

2

courts decisions concluding that there is no "distinctive group" because people are unvaccinated for different reasons and, among the unvaccinated group, there are "vast variations in attitudes, viewpoints, and experiences." Government's Response Brief p. 30 (quoting *United States v. Moses*, 566 F. Supp.3d 217, 222 (W.D.N.Y. 2021).

The Government then argues that unvaccinated individuals do not comprise a distinctive group because there are numerous reasons why a person might not be vaccinated and, therefore, vaccination status is not a good proxy for individuals holding a particular point of view. Government's Response Brief p. 31 (citing *United States v. Moses*, 566 F. Supp.3d 217, 222 (W.D.N.Y. 2021); *United States v. Elder*, 2022 WL 836923, at *11 (E.D.N.Y. Mar. 21, 2022); *Joffe v. King & Spalding LLP*, 575 F.Supp.3d 427, 434 (S.D.N.Y. 2021)). The Government then faults the Appellants for not revealing their reasons for not being vaccinated. Government's Response Brief p. 31.

The Government's premise—that the Appellants must show that those in the excluded group have a common reason for foregoing vaccination and that those in the group must share common viewpoints—is flawed. A common viewpoint is not required in order to qualify as a distinctive group; nor is it required that the defendants share any such viewpoint. Rather, the Sixth Amendment guarantees that the defendants will be judged according to the "commonsense judgment of the

3

community." *Lockhart v. McCree*, 476 U.S. 162, 174-75 (1986) (quoting *Taylor v. Louisiana*, 419 U.S. 522, 530-31 (1975)). By eliminating all unvaccinated jurors, the district court systematically deprived Appellants of a jury drawn from a fair cross-section of the *community*. The Government's argument that a "distinctive group" is defined by a particular view point that the defendants must share—is a false test.

This premise was rejected by the Supreme Court in *Taylor*, 419 U.S. at 528, when it rejected the argument that women were too diverse to qualify as a "distinctive group" under the Sixth Amendment's fair cross-section requirement. The Court's reasoning bears emphasis here:

> [I]t is not enough to say that women when sitting as jurors neither act nor tend to act as a class. . . . The truth is that the two sexes are not fungible; a community made up exclusively of one is different from a community composed of both; the subtle interplay of influence one on the other is among the imponderables. To insulate the courtroom from either may not in a given case make an iota of difference. Yet a flavor, a distinct quality is lost if either sex is excluded.

*Taylor*, 419 U.S. at 531-32. In *Taylor*, the Supreme Court did not require a showing that the excluded group acted as a class or shared common attitudes, viewpoints or experiences. Rather, women were considered a distinctive group without requiring evidence that they would, as a class, behave differently. Similarly, in this case, there is no basis for requiring the Appellants to show that unvaccinated individuals act as a class.

4

Rather, in *Lockhart*, the Supreme Court stated that "distinctiveness" must be linked to the purposes of the fair cross-section requirement identified in *Taylor* as:

> (1) guard[ing] against the exercise of the arbitrary power' and ensuring that the 'commonsense judgment of the community' will act as 'a hedge against the overzealous or mistaken prosecutor," (2) preserving 'public confidence in the fairness of the criminal justice system,' and (3) implementing our belief that 'sharing in the administration of justice is a phase of civic responsibility.

*Lockhart*, 476 U.S. at 174-75 (quoting *Taylor*, 419 U.S. at 530-31 (1975)).

It is beyond dispute that, at the time of the Appellants' trial, a significant portion of the population was unvaccinated. Within the *venire*, at least seven prospective jurors were unvaccinated, and all were struck. Two were excluded on the basis of vaccination status alone. Excluding unvaccinated jurors implicate all three of the purposes of the fair cross-section requirement identified in *Taylor* and *Lockhart*. First, there was harm to the Appellants because they were deprived of their constitutional right to be tried by a fair cross-section of the community. Second, there was harm to the public. As evidenced in this case, a significant portion of the population remains unvaccinated against COVID-19, and their exclusion from participation undermines confidence in the justice system. Finally, the excluded jurors were denied the opportunity of sharing the administration of justice and were denied the opportunity of carrying out their civic responsibility—solely on the basis of their vaccination status.

The Government faults the Appellants for failing to reveal their reasons for foregoing vaccination—implying that their reasons must align with that of those jurors in the *venire* who were struck. But there is no requirement that the defendant be a member of the distinctive group that is being excluded. The Supreme Court explicitly addressed this question in *Taylor*, where the Supreme Court rejected the state's argument that a man did not have standing to object to the exclusion of women from his jury. *Taylor*, 419 at 526. *See also Holland v. Illinois*, 493 U.S. 474, 477 (1990) (stating that "our cases hold that the Sixth Amendment entitles every defendant to object to a venire that is not designed to represent a fair cross section of the community whether or not the systematically excluded groups are groups to which he himself belongs").

Interestingly, in *Moses*, one of the cases cited by the Government, it was the Government that objected to the court's intention to exclude unvaccinated individuals from serving on the jury. In a letter to the district judge, the Government stated, "the government is concerned that striking all unvaccinated individuals from the pool would violate the fair cross-section requirement of the Constitution and the Jury Selection and Service Act." *United States v. Moses*, No. 6:19-cr-06074-EAW (W.D.N.Y.) (ECF 268). The Government argued that the differences in vaccination rates among different counties would cause some counties to be overrepresented. Additionally, differences in vaccination rates among different racial groups "is

6

enough to create a risk that excluding unvaccinated individuals from the jury pool will inadvertently result in the disproportionate exclusion of black citizens and/or citizens of a particular point of view." *Id.* While the district court in that case ultimately rejected the arguments, the Government's concern regarding a violation of the fair-cross section requirement remains applicable here.

Finally, the district court's legitimate concern of reducing the risk from COVID-19, could easily have been addressed by requiring the unvaccinated individuals to test for COVID-19. Better, still would have been to require all jurors to test. Since this was a relatively short, two-day trial, testing would have been an easily accomplished alternative. This would have been a small accommodation, especially when juxtaposed next to a violation of the Appellants' Sixth Amendment right to a jury chosen from a fair cross-section of the community, and the attendant harms produced by that violation.

## II. The factual statements advanced by the Government in its brief describing Appellant Lopez Alvarado's involvement in this drug conspiracy bear no resemblance to the facts and proof introduced at trial.

The statement of the facts contained in the Government's brief reads like what they should have proven at trial rather than what they proved. Weaving a good story with all the flair of a family conspiratorial tale does not replace the missing proof. Likewise, relying on the PSR to provide the missing evidence is improper, indeed prohibited by the law as stated in *Alleyne v. United States*, 570 U.S. 99 (2013). In

7

*Alleyne,* the Supreme Court instructed us that, when a defendant denies the allegations in the indictment, only evidence presented at trial can be used to prove the elements of the charged offense. Drug amounts that increase the statutory maximum of the offense are an element of the offense, not merely issues for sentencing, and submitted to the jury for proof beyond a reasonable doubt. *United States v. Stewart*, 256 F.3d 231, 252 (4th Cir.), *cert. denied*, 534 U.S. 1049 (2001). All facts that increase a mandatory minimum sentence must be found true by a jury not merely determined to be true by a judge or the writer of the PSR. Therefore, the Government's reliance on the PSR to supply the lacking proof to its evidence of that it was foreseeable for Lopez-Alvarado that the conspiracy involved more than 5 kilograms of cocaine fails as a matter of law. In fact, however, the United States' argument that the PSR demonstrates the degree and scope of Lopez Alvarado's involvement proves exactly the opposite. It shows, at best, that at trial the Government failed to prove facts which it now claims it did. Package it as one may, the information the Government provided the Probation Office to be included in PSR's Offense Conduct section was **not** the evidence which it presented at trial. Far from it. Perhaps, it represented what the Government had anticipated to prove, **no**t what it did prove. On appeal, the Government now claims that Lopez Alvarado managed the drug operation. This is not only untrue, but it lacks support in the trial transcript.

8

The PSR cannot be the basis to find that the Government's evidence established by competent evidence and beyond a reasonable doubt that Lopez Alvarado was personally involved in a conspiracy which distributed more than 5 kilograms of cocaine. All the evidence to prove Lopez Alvarado's guilt came from Mr. Spears. He was specific about his involvement and dealings with Lopez Alvarado. First, he delivered money in a bag to her once. He said the amount was about $22,000. Mr. Spears said that he owed Cruz Colon the amount of $66,000 for 2 kilograms of cocaine. Therefore, even if Lopez Alvarado knows that there is money inside the bag, $22,000 represents two thirds of a kilogram of cocaine. The Government's surveillance showed Mr. Spears went to her apartment. Second, she answered her husband Cruz Colon's phone one time. That phone call was introduced at trial. Third, she was present when he and Cruz Colon discussed a debt, and she added that the amount owed was $3,000 more. Fourth, Spears testified that he obtained "probably about" but "for sure" two kilograms from Lopez Alvarado. Mr. Spears' actual trial testimony is properly and accurately summarized in Appellants' joint Opening Brief at pages 7 through 12. In its Brief, the United States choses to go beyond Mr. Spears' words and testimony (even the ambiguity of his memory) to weave a tighter – yet wholly unproven – version of Lopez Alvarado's involvement in Cruz Colon's drug trafficking affairs.

To support its theory, the Government even argues in its Brief about the length of time that Cruz Colon and Lopez Alvarado have known each other and about their children. First, the argument is factually wrong; but more importantly, whatever the Government may want to make of this argument, the bottom line is that the jury cannot make anything of it because there was no evidence about this at trial. The Government also argues that a money seizure of $33,000 was made at the Richmond Airport. Assuming that is cocaine money, that would be the equivalent of a kilogram of cocaine. Still leaving the sum for Lopez Alvarado to less than 5 kilograms. The count is as follows: 1) 2 kilos that Mr. Spears testified; and 2) $55,000 in cash or one kilogram and two thirds of another. But of course, the Government never established who possessed the money seized in Richmond, its provenance or whether Lopez Alvarado know of its presence. If fact, the Government did not even address whether this money may have been left over from an earlier debt Mr. Spears paid Cruz Colon.

In sum, the jury's finding of fact that Lopez Alvarado participated in a conspiracy to possess with intent to distribute and to distribute more than five kilograms of cocaine is not supported by the evidence and proof it presented at trial. Therefore, this finding must be overturned as unsupported by the evidence and the case remanded to the district court for entering a judgment consistent with a finding of between 500 grams (half a kilogram) and less than 5,000 grams (5 kilograms) of cocaine.

# CONCLUSION

For the foregoing reasons, and those raised in Appellants' Opening Brief, the appellants respectfully request this Court vacate their convictions and remand to the district court for a new trial. In the alternative, Appellant Lopez-Alvarado requests that this Court vacate the conviction on Count 1 as to her of possession with intent to distribute and distribution of five (5) kilograms or more of cocaine and remand the case to the district court for resentencing.

Respectfully Submitted,

S/*Sicilia C. Englert*
Sicilia C. Englert
LAW OFFICE OF
SICILIA C. ENGLERT, LLC
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
703-636-2261
Counsel for Appellant
 Jose Cruz Colon

S/*Fernando Groene*
Fernando Groene
FERNANDO GROENE, PC
364 McLaws Circle, Suite 1A
Williamsburg, VA 23185
757-603-6173
Counsel for Appellant
Nastassja Lopez-Alvarado

Dated:  October 5, 2022