PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-4187

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

JOSE CRUZ COLON,

        Defendant – Appellant.

No. 22-4192

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

NASTASSJA LOPEZ-ALVARADO,

        Defendant – Appellant.

Appeals from the United States District Court for the Eastern District of Virginia, at Newport News. David J. Novak, District Judge. **(**4:20-cr-00069-DJN-LRL-1; 4:20-cr-00069-DJN-LRL-2).

Argued: January 27, 2023                                                    Decided: April 11, 2023

Before AGEE, QUATTLEBAUM, and RUSHING, Circuit Judges.

Affirmed by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Agee and Judge Rushing joined.

**ARGUED:** Sicilia Englert, LAW OFFICE OF SICILIA C. ENGLERT, LLC, Alexandria, Virginia; Fernando Groene, FERNANDO GROENE, PC, Williamsburg, Virginia, for Appellants. Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Jessica D. Aber, United States Attorney, Richmond, Virginia, Julie D. Podlesni, Assistant United States Attorney, Eric M. Hurt, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee.

QUATTLEBAUM, Circuit Judge:

As we all remember, the COVID-19 pandemic disrupted many of our national activities. It certainly disrupted the operation of federal and state judicial systems. Even so, trial judges around the country sought to adopt procedures that balanced the need to keep the wheels of justice moving with concerns about the safety of the parties, the witnesses, the jurors and court personnel. This consolidated appeal involves one such procedure.

The question presented here is whether a district court's sua sponte decision to strike unvaccinated prospective jurors for cause from a properly assembled venire during the COVID-19 pandemic violates the Sixth Amendment's fair-cross-section requirement. It does not. The fair-cross-section requirement applies to jury venires, not petit juries. And the district court's decision to strike unvaccinated jurors based on their perceived inability to serve without creating unnecessary safety risks affected the composition of the petit jury for this particular case, not the individuals represented in the venire from which the petit jury is selected.[1] So, we affirm.

---

[1] Our cases, as well other circuits, have used the terms "jury pool," "jury venire," "jury panel" and "petit jury" interchangeably. In this opinion, we refer to prospective jurors chosen for jury selection as the jury venire and the jurors empaneled as the petit jury. *See Black's Law Dictionary*, Venire (11th ed. 2019) ("A panel of persons selected for jury duty and from among whom the jurors are to be chosen."); *id.*, Petit Jury ("A jury summoned and empaneled in the trial of a specific case.").

3

I.

A superseding indictment charged Jose Cruz Colon and Natassja Lopez-Alvarado, husband and wife, with conspiracy to distribute and possession with intent to distribute one kilogram or more of heroin and five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). J.A. 25. Their trial was scheduled for September 2021, when the Delta variant of COVID-19 had emerged as a safety risk.

To address safety concerns, prior to their trial, the district court ordered the defendants to file a joint position as to whether they were vaccinated against COVID-19 or intended to be by the start of the trial. J.A. 57. The district court further ordered the government and the defendants to inform the court as to whether they would agree to strike unvaccinated individuals from the jury. J.A. 57. The defendants responded that they were not vaccinated and did not intend to be vaccinated by the start of the trial due to "sincerely held beliefs." J.A. 58. However, they agreed that prior to and during trial, they would test for COVID-19 and provide the test results to the court. J.A. 57. The defendants objected to the court's suggestion of striking unvaccinated jurors for cause. J.A. 59. The government took no position on striking unvaccinated jurors. J.A. 61.

The district court directed the clerk of court to send a jury questionnaire to a venire of 110 prospective jurors that the parties and the court would use to strike jurors for cause

4

without their physical presence.² J.A. 10, ECF No. 59. The district court's order provided that "[d]ue to the COVID-19 Delta variant causing a clear upward trend in COVID-19 cases, hospitalizations, and percent positivity across Virginia and the Eastern District of Virginia, the Court will again utilize a juror questionnaire to reduce the likelihood of requiring in-person visit to our Courthouse for a juror whose service may be deferred to a later date based on current circumstances." *Id.* In addition to background and case specific questions, the questionnaire included eight questions regarding COVID-19, including the prospective jurors' vaccination status, potential exposure to COVID-19 through travel or work and any risk factors for serious complications from COVID-19. J.A. 46–56. Cruz Colon did not object to any of the questions in the proposed questionnaire. J.A. 36. Lopez-Alvarado objected to two questions unrelated to the juror's vaccination status. J.A. 39–40.

---

² Pursuant to the Jury Service and Selection Act of 1968, as amended, 28 U.S.C. § 1861, *et seq.*, the Eastern District of Virginia has developed a plan for the random selection of grand and petit jurors. Plan for the Random Selection of Grand and Petit Jurors (E.D. Va. Feb. 6, 2003). Under that plan, prospective jurors are to be drawn at random from the list of registered voters in the district. *Id.* at 3. The clerk is then directed to maintain a "master jury wheel" of the names of those individuals randomly selected. *Id.* At that point, the clerk sends a "juror qualification questionnaire" to every person whose name is selected. *Id.* Individuals not disqualified, exempted, excused or excluded under 28 U.S.C. §§ 1865, 1866, are then placed into a "qualified jury wheel." *Id.* at 6. When ordered by the court, "the clerk shall draw from the qualified jury wheel the names of as many persons as may be required for assignment to grand and petit jury panels for each division." *Id.* at 7. It is not clear from the record before us if the 110 prospective jurors represent the first list of names drawn from the registered voters or if, from an initial list, the number of prospective jurors was reduced to 110. Either way, for purposes of this appeal, we will refer to the list of 110 potential jurors—which included unvaccinated individuals, as the venire.

5

The district court's order directed the parties to meet and confer before the final pretrial conference "to determine whether the parties can agree on which prospective jurors should be struck for cause based solely upon the responses to the questionnaires." J.A.10, ECF No. 59. Any prospective juror struck for cause at that time would not be required to appear in person for jury selection. *Id.*

During the pretrial conference, the district court struck jurors for cause based on a number of reasons. For example, it struck jurors for typical reasons such as the burden of serving on a single parent with children. J.A. 85, 86. But the court also struck all potential jurors who indicated that they were not vaccinated. Four of the unvaccinated individuals had alternate reasons that justified their being stricken: two unvaccinated jurors had travel plans close to the time of trial which, the court felt, carried a greater risk of exposure to COVID-19, J.A. 86–87, J.A. 92; one unvaccinated juror had been diagnosed with COVID-19 approximately four weeks before the start of the trial, J.A. 90; and one unvaccinated juror had diabetes and claimed that he would be unable to stay awake during trial, J.A. 90–91. The defendants requested that the two jurors with travel plans be stricken and did not object to the other two being stricken. After addressing the reasons for striking those prospective jurors, the district court noted that there was "only one person [] left in the panel who's not vaccinated." J.A. 92–93. Recognizing that the defendants had previously objected to striking jurors solely based on their vaccination status, the district court gave them an opportunity to address the court on that issue. J.A. 93.

Defense counsel explained that "[t]he thought process is that it may [not] include a representative sample of the jury. For instance, in this case, our clients are not vaccinated."

6

*Id.* The district court responded that the jury would not know whether the defendants were vaccinated. *Id.* Counsel then asserted that the issue was not whether the jurors were aware of their vaccination status, but "whether there is a jury of their peers." J.A. 93. Construing the defendants' argument as raising a *Batson*[3] challenge, the court found that "being vaccinated is not a protected class." *Id.* In explaining his reasoning for striking unvaccinated jurors, the district court also noted the risk of contracting COVID-19 with the rise of the Delta variant and with jurors removing masks while eating lunch. J.A. 94.

Counsel clarified that the defendants were not raising a *Batson* challenge. Instead, he argued that striking unvaccinated individuals excluded a section of potential jurors. J.A. 96. "I'm saying it excludes a section of the potential jurors. Furthermore, you know, COVID – you're going to make – you've made your ruling, but COVID attacks both the vaccinated and the unvaccinated. Furthermore, we have 105 plus a few people that didn't submit – 100 questionnaires, more or less. We don't know whether any of those people who are vaccinated are living with people or having interaction or working with or eating with or driving to work with people that are not vaccinated." J.A. 96. The district court responded by citing statistics showing that someone who is not vaccinated is 11 times more likely to die from COVID than someone who has been vaccinated. J.A. 97. Ultimately, the

---

[3] *Batson v. Kentucky*, 476 U.S. 79 (1986) (holding that the discriminatory use of peremptory challenges to exclude potential jurors on the basis of race is unconstitutional); *see also Rivera v. Illinois*, 556 U.S. 148, 153 (2009) ("[P]arties are constitutionally prohibited from exercising peremptory challenges to exclude jurors on the basis of race, ethnicity, or sex.").

7

district court overruled the objection and issued an order striking jurors for cause as determined at the pretrial conference. J.A. 140.

The district court then ordered the clerk of court to randomly divide the remaining 47 prospective jurors into three panels of 14 and one panel of 5, to appear for jury selection. J.A. 140. During the in-person voir dire, the court discovered another juror who was unvaccinated. J.A. 200–01. Over defense objection, the court struck the juror for cause, citing a health risk to the juror and to everyone in court. *Id.* The case then proceeded to trial. Ultimately, the jury convicted Cruz Colon of conspiracy to possess with intent to distribute one kilogram or more of heroin and five kilograms or more of cocaine and of conspiracy to commit money laundering, the two charges in the superseding indictment. It convicted Lopez-Alvarado of conspiracy to distribute and possession with intent to distribute five kilograms or more of cocaine and conspiracy to commit money laundering.[4]

The defendants timely appealed arguing that the district court violated the Sixth Amendment's fair-cross-section guarantee by excluding unvaccinated jurors.[5] We have jurisdiction under 28 U.S.C. § 1291.

---

[4] At the conclusion of the government's evidence, Cruz Colon and Lopez-Alvarado moved for judgment of acquittal on both counts. The district court denied those motions. However, as to Lopez-Alvarado, the court concluded that the government had not proven that Lopez-Alvarado was involved in a conspiracy to traffic heroin and dismissed that portion of count one against her. J.A. 587–92, J.A. 661.

[5] In addition, Lopez-Alvarado contends that the evidence was insufficient to support a jury finding that five kilograms or more of cocaine was reasonably foreseeable "as a necessary or natural consequence of the unlawful agreement." *United States v. Denton*, 944 F.3d, 170, 179 (4th Cir. 2019) (cleaned up). We review challenges to the sufficiency of the evidence de novo. *United States v. Kelly*, 510 F.3d 433, 440 (4th Cir. 2007). In doing so,

8

II.

"Because a constitutional question is a legal issue, we review the district court's ruling de novo." *United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 312 (4th Cir. 2018). The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. Const. amend. VI. This amendment has been interpreted as requiring a jury venire composed of a "fair cross section of the community . . . ." *Taylor v. Louisiana*, 419 U.S. 522, 526 (1975); *id.* at 530 ("Restricting jury service to only special groups or excluding identifiable segments playing major roles in the community cannot be squared with the constitutional concept of jury trial.").

---

"our role is limited to considering whether there is substantial evidence, taking the view most favorable to the Government, to support" the conviction. *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (internal citation and quotation marks omitted). There is no dispute that the conspiracy involved "roughly" ten kilograms of cocaine provided by the defendants. J.A. 434–35. In addition, the evidence included testimony from a co-conspirator that he went to the defendants' home and paid $66,000 for two kilograms of cocaine. J.A. 387, 392–94. Lopez-Alvarado was present and counted the money to ensure that it was the correct amount. J.A. 395. The co-conspirator also testified when he owed the defendants $22,000 for cocaine they had previously provided to him, Lopez-Alvarado answered the door when he went to deliver it and accepted the payment. J.A. 405, 413. He also testified that during discussions with Cruz Colon and Lopez-Alvarado about the quality and price of the cocaine, Lopez-Alvarado was an active participant in these conversations and "told [them] the correct number." J.A. 419–21. He further explained that there was no effort on the part of Cruz Colon to hide any of the drug activity from Lopez-Alvarado. J.A. 437. Finally, during the investigation, agents observed Lopez-Alvarado mail packages with falsified names and fictitious return addresses. J.A. 501, 526–29. This is sufficient evidence from which a jury could find that it was reasonably foreseeable to Lopez-Alvarado that the conspiracy would involve at least five kilograms of cocaine.

9

The defendants argue that the district court's use of for cause strikes excluded unvaccinated jurors in violation of their Sixth Amendment right to have their case heard before a "fair cross section of the community." Op. Br. 19. And they contend that they established a prima facie case of a Sixth Amendment violation in the proceedings below. Op. Br. 21.

"In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren v. Mississippi*, 439 U.S. 357, 364 (1979).

But before we get to the elements of a prima facie case, we must address a threshold issue—does the Sixth Amendment's fair-cross-section requirement even apply to the district court's decision to strike the unvaccinated potential jurors for cause related to COVID-19 safety risks? We hold that it does not.

First, the district court's strikes took place after the venire was assembled. Notably, the Supreme Court "ha[s] never invoked the fair-cross-section principle to invalidate the use of either for-cause or peremptory challenges to prospective jurors, or to require petit juries, as opposed to jury panels or venires, to reflect the composition of the community at large." *Lockhart v. McCree*, 476 U.S. 162, 173 (1986) (citations omitted). *Lockhart* explained that "any . . . group defined solely in terms of shared attitudes that render members of the group unable to serve as jurors in a particular case, may be excluded from

10

jury service without contravening any of the basic objectives of the fair-cross-section requirement." 476 U.S. at 176–77. And even prior to *Lockhart*, the Court had rejected the reasoning behind the defendants' argument. *See Taylor*, 419 U.S. at 538 (The Court "emphasized that in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition, but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community . . . .") (internal citations omitted); *Duren*, 439 U.S. at 364 n.20 ("[T]his requirement does not mean that petit juries actually chosen must mirror the community."). But if there was any lingering question on whether the fair-cross-section requirement might apply to petit juries, *Holland v. Illinois*, 493 U.S. 474 (1990) answered it. There, the Supreme Court rejected the petitioner's attempt to extend "the fair-cross-section requirement from the venire to the petit jury." *Id*. at 477–88.

Here, the venire was chosen from voter registration lists, a practice we expressly approved of in *United States v. Cecil*, 836 F.2d 1431 (4th Cir. 1988). The voter registration list used to create the master jury wheel included the unvaccinated individuals, as did the qualified jury wheel and the list of prospective jurors used to assemble the jury venire.

But in fairness, based on the ongoing pandemic, the district court's categorical strikes of unvaccinated jurors took place in a somewhat unusual process. In order to limit the number of individuals in the courtroom, the district court struck the jurors at a pre-trial conference after the venire was assembled but before the clerk of court assembled panels

11

from which the parties conducted voir dire. That, however, does not mean the "limited scope" of the fair-cross-section requirement applies to the use of strikes for cause based on vaccination status. *Lockhart*, 476 U.S. at 174. *Lockhart*—where the Supreme Court held that categorically striking anti-death penalty jurors for cause in a capital case did not violate the Sixth Amendment—teaches that the fair-cross-section requirement applies only where groups are excluded "for reasons completely unrelated to the ability of members of the group to serve as jurors in a particular case." *Lockhart*, 476 U.S at 175.[6] The Court explained that the categorical exclusion of such jurors based on their views on the death penalty did not raise the possibility of skewing the jury to the detriment of the defendant, did not exclude the group based on immutable characteristics like race, gender or ethnic background as opposed to their ability to serve and did not deprive historically disadvantaged groups of their right to serve. *Id.*

The same is true here. While the district court's strikes of unvaccinated jurors were based on COVID-19 safety risks rather than strongly held views about the subject matter of the case, those safety reasons related to the potential jurors' ability to serve in this particular case.[7] More specifically, the court felt that seating unvaccinated jurors in the

---

[6] *Lockhart* cited to the Supreme Court's prior cases in *Peters v. Kiff*, 407 U.S. 493 (1972) (African Americans); *Duren*, 439 U.S. 357 (women); *Taylor*, 419 U.S. 522 (same); and *Castaneda v. Partida*, 430 U.S. 482 (1977) (Mexican Americans) as examples of "distinctive groups" that had been unconstitutionally excluded from jury service. 476 U.S. at 175.

[7] While not addressed by the parties before the district court, the Jury Service and Selection Act expressly authorizes district courts to exclude potential jurors on grounds that their service "would be likely to disrupt the proceedings," 28 U.S.C. § 1866(c)(2), or

12

midst of a global pandemic unnecessarily jeopardized the safety of the parties, the witnesses, the jurors and court personnel. Consistent with that, it also struck potential jurors for cause for reasons unrelated to COVID. Those strikes were based on the ability of the potential jurors to serve in this particular case. As a result, the for-cause strikes affected the petit jury, not the venire. Thus, the Sixth Amendment's fair-cross-section requirement does not apply.

To be clear, our holding does not mean that the defendants have no recourse to challenge for cause strikes in circumstances like those presented here. Claims of discriminatory strikes are evaluated under *Batson*,[8] and the defendants may argue that the district court's efforts to manage the trial proceedings, including from risks posed by COVID, abused its discretion. But, under these circumstances, the defendants do not have a Sixth Amendment fair-cross-section challenge. Thus, we need not address whether the defendants met the prima facia requirements for such a claim.

---

that it "would be likely to . . . adversely affect the integrity of jury deliberations." *Id.* § 1866(c)(5). Further, the Supreme Court has recognized the inherent power of the courts "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," so long as the exercise of that power represents "a reasonable response to the problems and needs confronting the court's fair administration of justice." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016).

[8] The defendants disclaimed a *Batson* challenge in advancing their argument below. J.A. 96.

13

III.

For these reasons, the judgment of the district court is

*AFFIRMED*.